Our next case is number 14-1085, ENERGIZER Holdings, Inc., NYCO Technologies, Inc. v. Art Hassan, Christie Parker & Hill v. Plaintiff Appellant, NYKO Technologies, Inc. The lower court's grant of summary judgment should be reversed for at least the following three reasons, Your Honors, that are, we believe, are mandated by this court's precedent. Could I ask you a preliminary question? Sure. The parties spent a lot of time talking about this claim construction and whether Claim 1 covers the adapter embodiment and the non-adapter embodiment. Does that really make a difference? I mean, isn't it the case that if one of the embodiments within the claim isn't supported by the provisional application that the claim falls, as is the case in other areas where, for example, if part of the claim scope is obvious or anticipated, it's invalid? In other words, I'm asking why are we spending so much time worrying about the claim construction when perhaps it doesn't make any difference since the whole of the claim, one, for example, would have to be supported by the provision? That is a good point, Your Honor. You know, when we feel that the whole of Claim 1 is supported by the provisional, based on the order of the meeting. Well, I understand that, but you spent a lot of time arguing about whether the adapter embodiment is covered by Claim 1 or not. I, it doesn't seem to me that that necessarily makes any difference here. We wouldn't necessarily disagree with that. But, I mean, you agree that the non-adapter embodiment is covered by Claim 1? Yes. And so the question is whether that is supported by the provisional application, whether or not the claim as ultimately issued also covers the adapter? That's correct, Your Honor. That is what we are stating here in argument. And if you look at Figure 3, for example, of the provisional application, we don't think that there can be in doubt that Claim 1 and Claim 13 would read on Figure 3 of the provisional. Well, isn't it possible that Claim 3 of the provisional is just showing how the adapter fits into the base and that in operation the controller would be attached to the adapter when it's attached to the base? Well, it doesn't have to be. There's nothing in the spec of the provisional that says that the adapter must remain with the controller. As a matter of fact, it says that the adapter can remain with the controller. But apart from Figure 3, there's nothing in there to suggest that the, that the adapter is attached to the base before the controller is attached to the adapter, right? Well, there is a statement in the provisional that says that the adapter, not the adapter plus the controller, but just the adapter, may be snap-fit, for example, onto the base. But it doesn't, it doesn't say whether what's contemplated there is snapping the adapter into the base alone or with the controller connected to it, since the controller is not actually making direct contact with the base at all. It doesn't say that, but I believe the language of the provisional in that... A81? Yes. A81 says that in one embodiment, the adapter is placed into the docking bay by a push-fit, a snap-fit. Let me, can I just, I may step back and ask you this. The provisional application discusses the purpose of this as being to reduce wear and tear on the plug-in socket by repeated connecting and disconnecting. It proposes a solution to that problem by having an adapter, which perhaps not always, but in general, is going to stay with the controller, so that you don't have very many connecting, disconnecting, connecting, maybe sometimes, but not very many. And the problem of wear and tear is not a either-or, on-off, all-or-nothing problem, it's a problem of how often you do it. How is it that a non-adapter embodiment of the claim as issued fits with that, and I take it by that, I mean the only real solution to the problem that the provisional application addresses. Something else would be needed to address the problem of wear and tear if the plug is fixed to the base and constantly has to go on and off. Yes, Your Honor, those are the docking bays. The docking bays would be opposing sidewalls that guide the controller. But does anything in the provisional application, and I didn't see it, so say or show how the turnstiles, the photo walls, are supposed to be so designed as to substantially eliminate the wear and tear problem that comes from the connecting, disconnecting process. The provisional says that they're dimensioned. It just says you can fit, it just says the controller fits between them. I don't think that that sentence says anything about these walls will help address the wear and tear problem that results from repeated connecting and disconnecting. What are you looking at? What you said, Your Honor, is A78, that the docking bays 1214 are each dimension to accept a handheld controller. And if you look at figure six, for example, of the provisional and figure three, they both show to one skilled in the art that that's how it would work. For example, if you look at figure six, Your Honor, it clearly shows in figure six, those in figure five as well, those controllers inside the docking bays there, closely fitting inside of there. Now, importantly, Your Honor, the same problem of... Where was the line which you were just reading? What page? Yes, Your Honor. That is on page A78. 78. Yes. Importantly, Your Honors, in the non-provisional application, the 848 patent... At line 20. Excuse me? At line 20, I think is the one. Yeah. In the non-provisional, what I was going to say is that the identical problem is set forth in the background of the invention. This is on page 8126. I mean, there's some additional paragraphs there, but these paragraphs are reproduced from the provisional. They state the exact same problem that Judge Toronto, you were referring to. Right, but I guess what I'm focusing on is that the provisional... There are two different solutions to that problem. One of them is essentially very substantially reducing, if not to zero, then something approaching zero, the number of times you separate the plug and the socket. Another possible solution is somehow configuring the guiding walls to protect the connecting pieces, the plug and the socket, and I don't see that second piece in the provisional. The second piece, again, it would inherently be shown in the drawings, but the fact that the opposite walls of the docking bays are dimensioned to receive the controller, this that that would prevent a torque from being applied to the DC port on the base. But they're dimensioned to receive the controller in, not the provisional, but the 864, right? No, that's in the provisional, Your Honor. Well, it's in the provisional, but also on... It says it's dimensioned to accept the adapters, and then it says it's dimensioned to accept the controllers. It's the same reference. Oh. It says it's dimensioned to receive the adapters, then it says that it's dimensioned to receive the controllers. I guess below, I gave you the wrong line number, right at the bottom, 27, carrying over to 879. So carrying on with the 848 pattern on page A126, if you look at column 2, line 19, and this is just after the same statement in the provisional of the problem to be solved that Judge Toronto alluded to, it says in one embodiment, the at least one structure on the base includes opposite surfaces configured to align one of the at least one video game controllers such that the power input port of the video game controller couples to one of the at least one DC port. So that is describing exactly, it's just expressly describing in words what is clearly disclosed in figures 3, 5, and 6. So therefore, this gives some visibility and confirmation to our experts' testimony that the docking base and the opposite walls by themselves are a solution to the problem. Where was that reference that you just made? It's on A126. A126? Yes, which is the non-provisional, the 848 patent, on lines 19 through 24 here. But that doesn't tell us anything about the provision. We believe it does because it's describing the exact same structure. It's expressing it in words, but disclosure can be in the form of drawings. In this court precedent, in Coetel Manufacturing in Basquiat, for example, drawings alone may be sufficient to support. Right, but we're not supposed to be looking at the written description of the patent. We're supposed to be looking at the claim in the patent and comparing it to the written description in the provisional, period. So that's where your focus needs to be. Yes. So the only line that you're relying upon is that one at line 27 on page A78 that goes over to 79? We're relying on that. We're relying on the fact that the adapters, not the adapter plus the controller, may be snap fit, push fit, or press fit. Right, so the adapters fit in. Is there any place that you show an embodiment in the absence of adapters in a provisional? There's not a place where we show an embodiment. Or describe an embodiment. We describe the docking base. Okay, so you're saying they're dimensioned to accept. Are they dimensioned to prevent the bending? That would be understood clearly by one skilled in the art. But that's not really the question, is it? I mean, the question is, this is not enablement that we're talking about. We're talking about written description. Yes. We believe looking at figures five and six, for example, figures three, five, and six, it shows the controller within the docking bay, you know, closely held by those opposite side walls. But it doesn't show it without an adapter, I think is what Judge O'Malley was saying. It doesn't. I mean, that's correct. Is it not? It doesn't show it without an adapter. But we go back to the court's precedent in crown packaging. In crown packaging, it says that if there are two solutions to a problem stated in a specification that the claims don't fail if they focus on only one of the solutions to the problem. Here, the docking bay is a solution to the problem. At the very least, that's a fact issue. I mean, in BASCAP, for example, design patent drawings alone without any description were not a design patent. But that's pretty common for a design patent, right? I mean, description is not very extensive. I believe in that case, Your Honor, it was a subsequently filed non-provisional, if I'm not mistaken, that referred to drawings, it claimed priority of a design patent, I believe, was in that case. I may be incorrect. But, you know, in COITO manufacturing, for example, it says that drawings, text, or, you know, would be known. I draw an analogy to the doctrine of inherency in anticipation. This is inherently disclosed here, and it's understood by one skilled in the art. These are small, fragile connectors. If you have a docking bay that is dimensioned to receive the controllers, preventing those controllers from providing torque onto the fragile connector, that would be a solution to the problem. So what case says that we use the doctrine of inherency for written description? Well, maybe that was a loose analogy, Your Honor. I was drawing an analogy to it, not, you know, a case. But what I'm saying is that it would be understood by one skilled in the art. Why else are the docking bays there? That's a question that should potentially be asked. What is the purpose of the docking bays? Why have docking bays if that isn't doing anything? Well, it says it's guiding the adapters. It says it's guiding the adapters, and then it says it's dimensioned to receive the controllers. There are two statements there, Your Honor, on page 78. A78, there are two statements. So I'm looking at the one at the bottom on line 27. This court's recent decision in ScriptPro, which was... I think, Mr. Trezant, we're out of time. You're over the rebuttal. We'll give you two minutes for rebuttal. Hanley. Ami? Hanley. Okay. Hanley. All right. Go ahead. Yes. Thank you, Your Honor. This is Steve Hanley for the appellees. I'm with Sheppard Mullen Richter in Hampton. So, first of all, I would say that the district court got it right, and it framed the issue correctly. The only question is whether the claims of the non-provisional are adequately described in the provisional. And starting with the answer to Your Honor's initial question, does claim construction matter? And I would submit that no, it doesn't. And the reason it doesn't is because regardless of what supported by the base and on the base mean, we know that they're at least broad enough to cover the DC ports directly on the base that establish a direct connection between the controller and the charging station, and that is not disclosed in the provisional. So I would answer your first question that no, claim construction does not matter. So why is it not a fact question what figure three of the provisional would teach a skilled artist? Well, I think a couple of the court's decisions are instructive. I think the area decision is instructive just as sort of a baseline description of the written description requirement is that it really depends on the four corners of the written description of the application. In this case, I think read in context and looking at figure three, what you see is that there are adapters and the adapters are required to achieve the object of the invention. And so in context, figure three is consistent with the rest of the application that shows that the adapters are required. Figure three is described as having the adapter sitting in the recesses, correct? It is. Not the port for the... It is described as having the... It shows having the adapter in the recesses. It's not described as having the DC ports directly on the base and having a direct connection. And in fact, the provisional, as your honors have made reference to, actually criticizes that configuration where the DC port is directly on the base and there's a direct connection between the DC port and the controller. Right. So let me, I guess, maybe be a little bit more specific about the question. Why is it not a factual question? Figure three shows, whatever else it shows, it shows a device with the plugs sticking up already connected to the power station waiting for the controllers to come and get attached. That is one interpretation of figure three. I don't believe it's the correct interpretation of figure three in context. But why is it not a factual question whether a skilled artisan would understand that that arrangement is taught by the provisional application and that's not materially different from having the plug directly connected to the base without the intervening adapter? Yeah, I think the Lockwood case and the Martin B. Mayer case are instructive on that issue. And counsel used the term inherency. But with those cases, so in Lockwood, you had a situation where the claims required a video disc player in addition to a television set and a keypad at the consumer's home. And there was an argument made that it would have been obvious since everybody knew about video disc players to include a video disc player even though that wasn't disclosed. Right. But my question, I think as you could tell, avoided using any language about obviousness. What I said was why is it not a factual question whether a skilled artisan would understand that what was being taught there was a base station with plugs sticking up waiting for the controller? Yeah, and I think the way the court addressed that in Lockwood answers that question, which is the question is not whether a claimed invention is an obvious variant of what is disclosed. It's rather what is disclosed in the specification. A prior application itself must describe the invention. And the court in Lockwood, that case was decided on summary judgment. And despite expert testimony that would have been apparent to a person skilled in the art that you could have a video disc player. So although it may be a fact question under the law, it can be determined as a matter of law based on undisputed facts, namely the content of the written description. And a testimony of a person skilled in the art that they would understand that a variant of that would be just putting the DC ports directly on the base doesn't create a fact issue. And that's what the Lockwood court says. In other words, what you're saying is it has to be explicit rather than something that might be inferred by someone skilled in the art. It absolutely does, and that's consistent with the Lockwood case, and that's consistent with the Martin B. Mayer case. Where the BPAI said that it would be conventional to make a harness consisting of cables. The claim to harness consisting of cables, the earlier written description described a cable consisting of a plurality of wires. And the BPAI awarded priority and said that, well, a harness consisting of a plurality of cables would be conventional. And this court said it is not a question of whether one skilled in the art might be able to construct the patentee's device from the teaching of the disclosure. Rather, it is a question of whether the application necessarily discloses the particular device. And the particular device in this case is the device of the claims of the 848, which has DC ports directly on the base, and which has a direct connection between the adapters, excuse me, between the controllers and the charging station. Can I ask you one technical question? You agree that despite the somewhat broader language of the district court's invalidation decision, the only claims actually invalidated are the asserted claims, ones that cover non-adapters that it did not, in fact, because they're not even at issue in the case, invalidate claims that cover, that require the adapter. We did not ask for those other claims to be invalidated, nor do we believe the district court's order invalidated any other claims than those that would cover an embodiment that included a direct connection. And so I think the answer to the second question that was discussed at some length with Mr. Hassan was whether this disclosure of docking bays that are dimensioned to accept the controllers is a sufficient disclosure of an additional way to achieve the goal of the invention, and I would say it certainly is not. The docking bays are not described as an inventive feature of the invention that accomplishes the goal of enabling a fast, easy, and reliable connection between the controller and the charging station. Neither the abstract nor the summary of invention even mentions docking bays. The docking bays are disclosed only with recesses at the bottom that have contacts in them, and those recesses accept the adapters with the leads on the bottom face of the adapters. And so the only way that the provisional disclose is achieving the object of the invention of achieving a fast, easy, and reliable connection is that mating of the adapters and the recess and the leads on the recess. So there's never any disclosure of a docking bay without a recess to accept the adapter. And nor are the docking bays disclosed in the provisional as performing an alignment function. And the Council's reference to those provisions in the non-provisional that talk about the alignment function of docking bays, it supports the opposite conclusion that in the non-provisional you have actually discussion of the opposite surfaces with locators that can help perform the function of aligning the controllers with the USB port. There is no disclosure of that function of the docking bays in the provisional. And so that contrast is also helpful to the analysis, and it ties into our new matter argument that in order to support these much broader claims, there's considerable new matter that's included in the non-provisional application that supports DC ports on the base that support a direct connection between the controllers and the chargers. So one reading the provisional would not understand that the docking bays could perform the object of the invention without the adapters and without the mating recesses and contacts. Anything further? I believe I'm out of time here, Honor. No, you still have time. Oh, I misread. You don't have to use it. No, no, there are a couple of points that I would like to make. And I think that I would track you just slightly through the language of the provisional. And the background of the invention starts by criticizing the direct connection. And says that the problem is that the user has to be careful to connect the plug slowly, gently, and completely. And in the very next paragraph talks about this fast, easy, and reliable connection. And then there are three references to a fast, easy, or reliable connection in the rest of the provisional. Each one of them is expressly tied to the adapter. So paragraph 16 of the provisional says the adapters drop fit easily into the docking bays, thus providing a fast and easy connection of the handheld health controllers. Then paragraph 22, that's where you have this more extensive discussion of keeping the adapters attached to the controllers. So there's a lot of discussion there about enabling this fast, easy connection. But it concludes by stating this recharging process is fast and easy as the adapter allows the controller to be simply dropped into place rather than carefully connected to a fragile port or connector. And then paragraph 23, in describing these fitting options, such as the snap fit or the push fit, says these fitting engagements are fast and easy to use and also provide a reliable connection between the adapter and the charging station. So in every instance where the provisional is discussing how to achieve the advantages that are the object of the invention, it expressly ties it to the adapter. I would say that, in addition, the language of the provisional very clearly sets forth that the adapter is a requirement of the invention. And that is contrasted with other features of the invention which are disclosed as optional. So, for example, the embodiments are described that they may include four connectors or they may include fewer than four connectors. They may include more than four connectors. But that's optional. It may include an internal AC to DC converter or an external AC to DC converter. But, again, that's optional. But each time the adapters are disclosed, they are not described as optional. They are required. In sum, it is the adapter and the mating recesses with electrical contacts that are described as essential to the invention. And then I would conclude with the point that it is entirely proper to decide this case on summary judgment. We've talked a little bit about that. Both the New Railhead case and the Lockwood case affirmed district court summary judgment, including the Lockwood case, despite expert testimony that purportedly created this issue of fact about whether a certain aspect that was not disclosed in the earlier application was, quote-unquote, apparent. And so, nevertheless, the district court granted summary judgment, and this court upheld it. The Aniscape and the Tronzo cases were both decided by this court, even though, and reversing jury verdicts, and including in those cases over expert testimony that would purportedly create a tribal issue of fact. And in the Aniscape case, the court said that the expert testimony, quote, cannot override the objective content of the earlier application. The other point about an issue of fact purportedly created by expert testimony is that expert testimony here was really only offered on a single issue, and that was claim construction. Basically, you had an expert saying that on the base could include not directly on and supported by the base could include not directly on. As we discussed at the outset, Your Honor, we don't believe claim construction matters because regardless of the construction of on the base or supported by the base, both claims 1 and 13 are broad enough to include a direct connection, and the direct connection is not disclosed in the provisional application. And finally, to the extent that there's any errors deemed in the district court's analysis, this is a de novo review. It's decided essentially based on the four corners of the provisional application and comparing those to the claims. And so this court should affirm on any grounds that it finds proper. Okay. Thank you, Mr. Hanley. Thank you. I'll be down here in a few minutes, sir. I'll highlight a statement that Mr. Hanley made in response to Judge Toronto's question about Figure 3. He said that's one interpretation. One interpretation is that it has the disclosure. I mean, that's the issue here. The narrow issue is whether there's a statement of fact. Also, in this court's precedent, including Script Probe, there must be a clear statement of limitation that a skilled artisan, if being reasonable, would have to read as requiring the, in this case, the detachable connectors at issue. There is no clear statement that says that it has to be there. What I keep focusing on is that all of that, including in Script Probe, focuses on what functions or what problem is being solved, what and how. And the provisional application, in particular, the sentence at the bottom of A78, says, as to the little walls, no more than they have to be big enough to hold, to accept the controller. They don't say they have to be, speaking informally, snug enough either to prevent the wobbling or to guide the placement. We would state with our expert testimony that dimensioned is something that means snugly. It's dimensioned to accept it. It's not just there for no purpose. And then if you look at, in the context of Figures 3, 4, and 5, I mean, 5 and 6 is particularly, with the controllers in it, it shows a very snug fit. It shows the controllers. Figure 3, your description of Figure 3, correct me if I'm wrong, is at the bottom of A79, right? Beginning at line 25? That is one portion. I'm having a hard time understanding why you keep focusing on Figure 3, where Figure 3 specifically addresses simply adapters being in those recesses. Certainly, Figure 3 shows adapters in the recesses, but the fact is that many patents show drawings that have features in each and every drawing. But there's no written description of Figure 3 that's different from that, is there? The written description includes the figures. Right. Right. So the question here, we believe, is the question in crown packaging. The written description shows docking bays and opposite walls that show a snug fit with the controllers in Figures 5 and 6, for example, that would prevent the torque on the DC port. That's shown. One skilled in the art would see that, and that is not obvious. That's not derived. That is actually shown, and we have expert testimony that shows that. In the cases that Mr. Hanley brought up, those cases had to do with where there was an extra element that wasn't disclosed. What's not shown, I guess, is putting the adapter in the base and then fitting the controller into the adapter. That's not something that's shown. How else would Figure 3 work? I mean, there's no other way for Figure 3 to operate here. There's no other way. And we would go back to the fact that, in this case, it shows that the adapters are snap fit, press fit, or push fit. Take a snap fit. A snap fit is a mechanical fastening of one part to another. If it's snap fit in there in Figure 3, which is fully disclosed, you would put the controller on top of it. I mean, how else would Figure 3 work is our question. That's the question. But there's still the adapter, right? Snapped into the base. The adapter snapped into the base. The adapter is snapped into the base. It's part of the base at that point, and the only way that the embodiment of Figure 3 would work is to put the controller on it as shown in Figure 6. Unless you assume that Figure 3 shows part of the snapping in, and the controller would be attached to the adapter before it snapped in. It says that it can. The application does not say that it must. That is not a clear and unequivocal disavowal. We can. I mean, there are cases stronger than that criticizing embodiments. That's not the written description standard, right? It's not that there has to be a clear and unmistakable disavowal of what you say is supported by the provisional application. You have to show that it is supported by the provision. Well, we believe that there has to be a statement, Your Honor, in script form. There must be a clear statement of limitation that a skilled artisan, if being reasonable, would have to read as requiring the featured issue. This is like an omitted element test. Where does it say that you have to have it? Where is the clear statement that omits, that says that a claim that omits that feature is not available? Okay. Mr. Hazan, we're over your time. Thank you. Thank you, counsel, the case is submitted.